

1  MARIO N. ALIOTO, ESQ. (56433)
   LAUREN C. RUSSELL, ESQ. (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
   2280 Union Street
3  San Francisco, CA 94123
   Telephone: (415) 563-7200
4  Facsimile: (415) 346-0679
5  E-mail: malioto@tatp.com
   laurenrussell@tatp.com
6
   JOSEPH M. PATANE, ESQ. (72202)
7  LAW OFFICE OF JOSEPH M. PATANE
8  2280 Union Street
   San Francisco, CA 94123
9  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
10 E-mail: jpatane@tatp.com

11 Attorneys for Plaintiff Figone

12
                   **UNITED STATES DISTRICT COURT**
13
                   **NORTHERN DISTRICT OF CALIFORNIA**
14
                                                               **MMC**
15 JEFFREY FIGONE, on behalf of himself and all others )   Case No.
   similarly situated,                              )
                                                     )        6331
16         Plaintiff,                                )   **CLASS ACTION COMPLAINT**
17 vs.                                               )
                                                     )
18 LG ELECTRONICS, INC.; SAMSUNG                     )
   ELECTRONICS CO., LTD.; SAMSUNG SDI CO.,           )   **JURY TRIAL DEMANDED**
19 LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; )
   SAMSUNG SDI AMERICA, INC.; SAMTEL                 )
20 COLOR, LTD.; TOSHIBA CORPORATION;                 )
21 TOSHIBA AMERICA ELECTRONIC                        )
   COMPONENTS, INC.; TOSHIBA AMERICA                 )
22 INFORMATION SYSTEMS, INC.; MATSUSHITA             )
   TOSHIBA PICTURE DISPLAY CO., LTD.; MT             )
23 PICTURE DISPLAY CORPORATION OF AMERICA )
24 (NEW YORK); MT PICTURE DISPLAY                    )
   CORPORATION OF AMERICA (OHIO);                    )
25 MATSUSHITA ELECTRIC INDUSTRIAL CO.,               )
   LTD.; PANASONIC CORPORATION OF NORTH              )
26 AMERICA; BEIJING-MATSUSHITA COLOR CRT             )
   COMPANY, LTD.; ORION ELECTRIC CO., LTD.;          )
27 ORION AMERICA, INC.; HITACHI LTD.; HITACHI )
28 AMERICA LTD.; HITACHI ASIA, LTD.;                 )

1  CHUNGHWA PICTURE TUBES LTD.;          )
   CHUNGHWA PICTURE TUBES (MALAYSIA)     )
2  SDN. BHD.; LP DISPLAYS INTERNATIONAL, )
   LTD.; KONINKLIJKE PHILIPS ELECTRONICS )
3  N.V.; PHILIPS ELECTRONICS NORTH AMERICA; )
   IRICO GROUP CORP.; IRICO DISPLAY DEVICES )
4  CO., LTD.; THAI CRT COMPANY, LTD.; and )
   TATUNG COMPANY OF AMERICA, INC.,       )
5                                         )
                                          )
6            Defendants                    )
   _____)

7

## CLASS ACTION COMPLAINT

Plaintiff Jeffrey Figone ("Figone") on behalf of himself and all others similarly situated in the United States, brings this action for damages and injunctive relief under state and federal antitrust, unfair competition, and consumer protection laws against the Defendants named herein, demanding trial by jury, and complaining and alleging as follows:

## NATURE OF THE CASE

1.      This lawsuit is brought as a class action on behalf of individuals and entities that indirectly purchased products containing cathode ray tubes ("CRT Products") (as further defined below), in the United States from Defendants, their predecessors, or their controlled subsidiaries and affiliates during the period beginning at least January 1, 1995 through the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants conspired to fix, raise, maintain or stabilize prices of CRT Products sold in the United States. Because of Defendants' unlawful conduct, Plaintiff and other Class Members paid artificially inflated prices for CRT Products and have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

2.      This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. §26, to obtain injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. §1, to recover damages under state antitrust and consumer protection laws, and to recover costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendants' violations of those laws.

3.    The Court has subject matter jurisdiction over the federal claim under 28 U.S.C. §§ 1331 and 1337. The Court has subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy.

4.    This court also has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which amended 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, "any member of a class of Plaintiffs is a citizen of a state different from any Defendant and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs." This Court also has jurisdiction under 28 U.S.C. § 1332(d) because "one or more members of the class is a citizen of a state within the United States and one or more of the Defendants is a citizen or subject of a foreign state."

5.    Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in this judicial district because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in, this district, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and a substantial portion of the affected portion of the interstate trade and commerce described below has been carried out in this district.

## DEFINITIONS

6.    As used herein, the term "CRT Products" means cathode ray tubes and products containing cathode ray tubes, including television sets and computer monitors.

7.    The "Class Period" or "relevant period" means the period beginning at least January 1, 1995 through the present.

8.    "Person" means any individual, partnership, corporation, association, or other business or legal entity.

9.    The "Indirect Purchaser States" are Arizona, California, District of Columbia; Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Mexico,

1  North Carolina. North Dakota, South Dakota, Tennessee, Vermont, West Virginia, and
2  Wisconsin.

3      10.    The "Consumer Fraud States" are Arkansas, California, District of Columbia,
4  Florida. Hawaii. Kansas. Maine, Massachusetts, Nebraska, New York, New Hampshire, New
5  Mexico. North Carolina, Rhode Island, Vermont, and West Virginia.

6                                    **PLAINTIFF**

7      11.    Plaintiff Jeffrey Figone ("Figone") is a California resident. During the relevant
8  period. Figone indirectly purchased CRT Products from one or more of the Defendants or their
9  co-conspirators and has been injured by reason of the antitrust violations alleged in this
10  Complaint.

11                                   **DEFENDANTS**

12      12.    Defendant LG Electronics, Inc. ("LG Electronics") is a corporation organized
13  under the laws of Korea with its principal place of business located at LG Twin Towers, 20
14  Yeouido-dong. Yeoungdeungpo-gu. Seoul 150-721, South Korea. LG Electronics is a $48.5
15  billion global force in consumer electronics, home appliances and mobile communications,
16  which established its first overseas branch office in New York in 1968. The company's name
17  was changed from GoldStar Communications to LG Electronics in 1995, the year in which it
18  also acquired Zenith in the United States. During the Class Period, LG Electronics
19  manufactured, sold and distributed CRT Products to customers throughout the United States.

20      13.    Defendant Samsung Electronics Co., Ltd. is a company organized under the laws
21  of Korea with its principal place of business located at Samsung Main Building, 250, 2-ga,
22  Taepyong-ro, Jung-gu. Seoul 100-742, South Korea. During the Class Period, Samsung
23  Electronics Co., Ltd. manufactured, sold and distributed CRT Products to customers throughout
24  the United States.

25      14.    Defendant Samsung SDI Co., Ltd. f/k/a Samsung Display Device Co., Ltd. is a
26  company organized under the laws of Korea with its principal place of business located at 15th –
27  18th Floor, Samsung Life Insurance Building, 150, 2-ga, Taepyong-ro, Jung-gu, Seoul, 100-716,
28  South Korea. Samsung SDI Co., Ltd. is a public company. Samsung Electronics Co., Ltd. is its

                                        **4**

1    majority shareholder holding almost 20 percent of the stock. Founded in 1970, Samsung SDI
2    Co., Ltd. claims to be the world's leading company in the display and energy businesses, with
3    28,000 employees and facilities in 18 countries. Samsung SDI Co., Ltd. has offices in Chicago
4    and San Diego. During the Class Period, Samsung SDI Co. Ltd. manufactured, sold and
5    distributed CRT Products to customers throughout the United States.

6         15.    Defendant Samsung Electronics America, Inc. is a New York corporation with its
7    principal place of business located at 105 Challenger Road, 6th Floor, Ridgefield Park, New
8    Jersey 07660. Samsung Electronics America, Inc. is a wholly-owned and controlled subsidiary
9    of defendant Samsung Electronics Co., Ltd. During the Class Period, Samsung Electronics
10   America, Inc. manufactured, sold and distributed CRT Products to customers throughout the
11   United States.

12        16.    Defendant Samsung SDI America, Inc. is a California corporation with its
13   principal place of business located at 3333 Michelson Drive, Suite 700, Irvine, California.
14   Samsung SDI America, Inc. is a wholly owned and controlled subsidiary of Samsung SDI Co.,
15   Ltd., which is in turn a wholly owned and controlled subsidiary of Samsung Electronics Co.,
16   Ltd. During the Class Period, Samsung SDI America, Inc. manufactured, sold and distributed
17   CRT Products to customers throughout the United States.

18        17.    Defendants Samsung Electronics Co., Ltd., Samsung SDI Co., Ltd., Samsung
19   Electronics America, Inc., and Samsung SDI America, Inc. are referred to collectively herein as
20   "Samsung."

21        18.    Defendant Samtel Color, Ltd. ("Samtel") is an Indian company with its principal
22   place of business located at 52, Community Centre, New Friends Colony, New Delhi-110065.
23   Samtel's market share for CRT products sold in India is approximately 40%. Samtel is India's
24   largest exporter of CRT products. Samtel has gained safety approvals from the United States,
25   Canada, Germany and Great Britain for its CRT products. During the Class Period, Samtel
26   manufactured, sold and distributed CRT Products to customers throughout the United States.

27        19.    Defendant Toshiba Corporation ("Toshiba") is a business entity organized under
28   the laws of Japan, with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku,

1    Tokyo 105-8001, Japan. In 2001, Toshiba held a 5-10 percent worldwide market share for CRTs

2    used in televisions and computer monitors. In 2002, Toshiba entered into a joint venture with

3    defendant Matsushita Electric called Matsushita Toshiba Picture Display Co., Ltd. in which the

4    entities consolidated their CRT businesses. In 2004, Toshiba entered into a contract with

5    defendant Orion whereby Orion became the supplier and maker of Toshiba-branded CRT

6    televisions. During the Class Period, Toshiba manufactured, sold and distributed CRT Products

7    to customers throughout the United States.

8         20.    Toshiba America Electronics Components, Inc. is a California corporation with

9    its principal place of business located at 9775 Toledo Way, Irvine, California 92618, and 19000

10   MacArthur Boulevard, Suite 400, Irvine, California 92612. Toshiba America Electronics

11   Components, Inc. is a wholly owned and controlled subsidiary of Toshiba America, Inc., which

12   is a holding company for Defendant Toshiba Corporation, and the sales and marketing

13   representative for Defendant Matsushita Toshiba Picture Display Co., Ltd. During the Class

14   Period, Toshiba Electronics Components, Inc. manufactured, sold and distributed CRT Products

15   to customers throughout the United States.

16        21.    Defendant Toshiba America Information Systems, Inc. is a California corporation

17   with its principal place of business located at 9470 Irvine Boulevard, Irvine, California 92718.

18   Toshiba America Information Systems, Inc. is a wholly owned and controlled subsidiary of

19   Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class

20   Period, Toshiba America Information Systems, Inc. manufactured, sold and distributed CRT

21   Products to customers throughout the United States.

22        22.    Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc.

23   and Toshiba America Information Systems, Inc. are referred to collectively herein as "Toshiba."

24        23.    Defendant Matsushita Toshiba Picture Display Co., Ltd. ("Matsushita-Toshiba")

25   was established as a CRT joint venture between Defendants Matsushita and Toshiba.

26   Matsushita-Toshiba is a Japanese entity with its principal place of business located at 1-1,

27   Saiwai-cho, Takatsuki-shi, Osaka 569-1193, Japan. On April 3, 2007, Defendant Matsushita

28   Electric purchased the remaining stake in Matsushita-Toshiba, making it a wholly owned

subsidiary, and renaming it MT Picture Display Co., Ltd. During the Class Period, Matsushita-Toshiba manufactured, sold and distributed CRT Products to customers throughout the United States.

24.    Defendant MT Picture Display Corporation of America (New York) ("MTPDA(NY)") is a dissolved Maryland corporation previously located at 100 Westinghouse Circle, Horseheads, New York 14845. MTDPA(NY) was a wholly owned and controlled subsidiary of Defendant Matsushita-Toshiba. MTDPA(NY) specialized in the manufacture of CRT televisions above 30 inches wide, supplying some 950,000 units annually to the North American market. Matsushita and Toshiba announced plans to discontinue operations on December 29, 2005. During the Class Period prior to December 2005, MTDPA(NY) manufactured, sold and distributed CRT Products to customers throughout the United States.

25.    Defendant MT Picture Display Corporation of America (Ohio) ("MTDPA(OH)") was a Delaware corporation with its principal place of business located at 1554 McKaig Avenue, Building A, Troy, Ohio 45373. MTDPA(OH) was dissolved on March 27, 2007. MTDPA(OH) was a wholly owned and controlled subsidiary of Defendant Matsushita-Toshiba. During the Class Period prior to February 2006, MTDPA(OH) manufactured, sold and distributed CRT Products to customers throughout the United States.

26.    Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita Electric") is a Japanese entity with its principal place of business located at 1006 Oaza Kadoma, Kadoma-shi, Osaka 571-8501, Japan. In 2002, Matsushita Electric entered into a CRT joint venture with Defendant Toshiba forming Defendant Matsushita-Toshiba. Matsushita Electric was the majority owner with 64.5 percent. On April 3, 2007, Matsushita Electric purchased the remaining 35.5 percent stake in the joint venture, making Matsushita-Toshiba a wholly owned subsidiary of Matsushita Electric. Matsushita Electric is best known for its Panasonic brand, which in 2005 had the highest CRT revenue in Japan. During the Class Period, Matsushita Electric manufactured, sold and distributed CRT Products to customers throughout the United States.

27.    Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware corporation with its principal place of business located at One Panasonic Way, Secaucus, New Jersey. Panasonic is a wholly owned and controlled subsidiary of Defendant Matsushita Electric. During the Class Period, Panasonic manufactured, sold and distributed CRT Products to customers throughout the United States.

28.    Defendant Beijing-Matsushita Color CRT Company, Ltd. ("BMCC") is a Chinese company with its principal place of business located at No. 9, Jiuxianqiao N. Rd., Dashanzi Chaoyang District, Beijing, China. BMCC is the second largest producer of CRTs for televisions in China. During the Class Period, BMCC manufactured, sold and distributed CRT Products throughout the United States.

29.    Defendant Orion Electric Co., Ltd. ("Orion Electric") is a Japanese company with its principal places of business at 41-1 Iehisa-cho, Echizen-shi, Fukui 915-8555, Japan. Orion Electric currently manufactures CRT Products for Defendant Toshiba Corporation. During the Class Period, Orion Electric manufactured, sold and distributed CRT Products to customers throughout the United States.

30.    Defendant Orion America, Inc. ("Orion America") is an Indiana corporation with its principal place of business located at Hwy 1 North, Orion Place, Princeton, Indiana. Orion America is a wholly owned and controlled subsidiary of Defendant Orion Electric. During the Class Period, Orion America manufactured, sold and distributed CRT Products to customers throughout the United States.

31.    Defendant Hitachi, Ltd. is a business entity organized under the laws of Japan, with its principal place of business located at 6-1 Marunouchi Center Building 13F, Chiyoda-ku, Tokyo 100-8280, Japan. Hitachi Ltd. is the parent company for the Hitachi brand of CRT products. During the Class Period, Hitachi Ltd. manufactured, sold and distributed CRT Products to customers throughout the United States.

32.    Defendant Hitachi America, Ltd. ("Hitachi America") is a wholly owned and controlled subsidiary of defendant Hitachi. Hitachi America is a business entity organized under the laws of New York, with its principal place of business located at 2000 Sierra Point Parkway,

1    Brisbane. California 94005. During the Class Period, Hitachi America manufactured, sold and

2    distributed CRT Products to customers throughout the United States.

3        33.    Defendant Hitachi Asia, Ltd. ("Hitachi Asia") is a Singaporean company with its

4    principal place of business located at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore,

5    049318. Hitachi Asia is a wholly owned and controlled subsidiary of defendant Hitachi. During

6    the Class Period, Hitachi Asia manufactured, sold and distributed CRT Products to customers

7    throughout the United States.

8        34.    Defendants Hitachi Ltd., Hitachi America, and Hitachi Asia are collectively

9    referred to herein as "Hitachi."

10        35.    Defendant Chunghwa Picture Tubes Ltd. ("Chunghwa Picture Tubes") is a

11    business entity organized under the laws of Taiwan, with its principal place of business located

12    at 1127 Heping Road, Bade City, Taoyuan, Taiwan R.O.C. Chunghwa Picture Tubes is a

13    leading manufacturer of CRT Products. During the Class Period, Chunghwa Picture Tubes

14    manufactured, sold and distributed CRT Products to customers throughout the United States.

15        36.    Defendant Chunghwa Picture Tubes (Malaysia) Sdn. Bhd. ("Chungwha

16    Malaysia") is a Malaysian company with its principal place of business located at Lot 1, Subang

17    Hi-Tech Industrial Park. Batu Tiga, 4000 Shah Alam, Selangor Darul Ehsan, Malaysia.

18    Chunghwa Malaysia a wholly owned and controlled subsidiary of defendant Chungwha Picture

19    Tubes. Chungwha Malaysia is also a leading worldwide supplier of CRT Products. During the

20    Class Period, Chungwha Malaysia manufactured, sold and distributed CRT Products to

21    customers throughout the United States.

22        37.    Defendants Chungwha Picture Tubes and Chungwha Malaysia are collectively

23    referred to herein as "Chungwha."

24        38.    Defendant LP Displays International, Ltd. f/k/a LG Philips Displays ("LP

25    Displays") was created in 2001 as a 50/50 joint venture between defendants LG Electronics and

26    Royal Philips Electronics of The Netherlands. In March 2007, LP Displays became an

27    independent company organized under the laws of Hong Kong with its principal place of

28    business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road

1   Central. Sheung Wan, Hong Kong. LP Displays is a leading supplier of color picture tubes for

2   use in television sets and computer monitors with annual sales for 2006 of over $2 billion. LP

3   Displays announced in March 2007 that Royal Philips and LG Electronics would lose control

4   over the company and the shares would be owned by financial institutions and private equity

5   firms. During the Class Period, LP Displays manufactured, sold and distributed CRT Products to

6   customers throughout the United States.

7       39.    Defendant Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics

8   N.V. ("Royal Philips") is a company organized under the laws of The Netherlands with its

9   principal place of business located at Amstelplein 2, Breitner Center, 1070 MX Amsterdam, The

10  Netherlands. Royal Philips, founded in 1891, is one of the world's largest electronics

11  companies, with 160,900 employees located in over 60 countries. Royal Philips had sole

12  ownership of its CRT business until 2000. In 2001, Royal Philips transferred its CRT business

13  to a 50/50 CRT joint venture with LG Electronics forming defendant LP Displays. In December

14  2005, as a result of increased pressure on demand and prices for CRTs, Royal Philips wrote off

15  the remaining book value of 126 million Euros of its investment and said it would not inject

16  further capital into the joint venture. During the Class Period, Royal Philips manufactured, sold

17  and distributed CRT Products to customers throughout the United States.

18      40.    Defendant Philips Electronics North America Corporation ("Philips Electronics

19  NA") is a Delaware corporation with its principal palce of business located at 1251 Avenue of

20  the Americas, New York, NY 10020-1104. Philips Electronics NA is a wholly owned and

21  controlled subsidiary of defendant Royal Philips. During the Class Period, Philips Electronics

22  NA manufactured, sold and distributed CRT Products to customers throughout the United

23  States.

24      41.    Defendant Irico Group Corporation is a Chinese entity with its principal place of

25  business located at 1 Caihong Rd., Xianyang City, Shaanxi Province 712021. Irico Group

26  Corporation is the parent company for multiple subsidiaries engaged in the manufacture,

27  distribution, and sale of CRT Products. During the Class Period, Irico Group Corporation

28  manufactured, sold and distributed CRT Products throughout the United States.

1    42.    Irico Display Devices Co., Ltd. is a Chinese entity with its principal place of
2  business located at No. 16, Fenghui South Road West, District High-tech Development Zone,
3  Xi'an, SXI 710075. Irico Display Devices Co., Ltd. is a partially-owned subsidiary of defendant
4  Irico Group Corporation. In 2006, Irico Display Devices Co., Ltd. was China's top CRT maker.
5  During the Class Period, Irico Display Devices Co., Ltd. manufactured, sold and distributed
6  CRT Products throughout the United States.

7    43.    Defendants Irico Group Corporation and Irico Display Devices Co., Ltd. are
8  collectively referred to herein as "Irico."

9    44.    Defendant Thai CRT Company, Ltd. ("Thai CRT") is a Thai company with its
10 principal place of business located at 1/F Siam Cement Road, Bangsue Dusit, Bangkok,
11 Thailand. Thai CRT is a subsidiary of Siam Cement Group. It was established in 1986 as
12 Thailand's first manufacturer of CRTs for color televisions. During the Class Period, Thai CRT
13 manufactured, sold and distributed CRT Products throughout the United States.

14   45.    Defendant Tatung Company of America, Inc. ("Tatung America") is a California
15 corporation with its principal place of business located at 2850 El Presidio Street, Long Beach,
16 California. Tatung America was founded in 1972 and is a wholly owned and controlled
17 subsidiary of Tatung Company of Taiwan. During the Class Period, Tatung America
18 manufactured, sold and distributed CRT Products throughout the United States.

19                          **DEFENDANTS AND CO-CONSPIRATORS**

20   46.    Various other persons, firms and corporations, not named as Defendants herein,
21 and presently unknown to Plaintiff, have participated as co-conspirators with Defendants and
22 have performed acts and made statements in furtherance of the conspiracy and/or in furtherance
23 of the anticompetitive, unfair or deceptive conduct.

24   47.    Whenever in this Complaint reference is made to any act, deed or transaction of
25 any corporation, the allegation means that the corporation engaged in the act, deed or transaction
26 by or through its officers, directors, agents, employees or representatives while they were
27 actively engaged in the management, direction, control or transaction of the corporation's
28 business or affairs.

48.    Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant which is a subsidiary of a foreign parent acts as the sole United States agent for CRT Products made by its parent company.

## INTERSTATE TRADE AND COMMERCE

49.    Throughout the Class Period, there was a continuous and uninterrupted flow of CRT Product sales in interstate and international commerce throughout the United States.

50.    Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to CRT Product purchasers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the United States CRT Products market.

## CLASS ACTION ALLEGATIONS

51.    Plaintiff brings this action on behalf of himself and as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of all members of the following class:

> All persons and or entities residing in the United States (excluding Defendants, co-conspirators, their subsidiaries and affiliates, all governmental entities, and any judicial officer presiding over this action, including members of his/her immediate family and judicial staff, and any juror assigned to this action) who or which indirectly purchased CRT Products in the United States for their own use and not for resale, at any time during the period from January 1, 1995 through the present.

52.    This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

a.    The Class is ascertainable and there is a well-defined community of interest among members of the Class;

b.    Based upon the nature of trade and commerce involved and the number of indirect purchasers of CRT Products, Plaintiff believes that the number of Class members is very large, and therefore joinder of all Class members is not practicable;

1        c.        Plaintiff's claims are typical of the claims of the members of the Class

2   because Plaintiff indirectly purchased CRT Products manufactured by Defendants or their co-

3   conspirators, and therefore Plaintiff's claims arise from the same common course of conduct

4   giving rise to the claims of the members of the Class and the relief sought is common to the

5   Class;

6        d.        The following common questions of law or fact, among others, exist as to

7   the members of the Class:

8            i.        Whether Defendants formed and operated a combination or

9   conspiracy to fix, raise, maintain, or stabilize the prices of CRT Products;

10            ii.        Whether the combination or conspiracy caused CRT Products

11   prices to be higher than they would have been in the absence of Defendants' conduct;

12            iii.        The operative time period of Defendants' combination or

13   conspiracy;

14            iv.        Whether Defendants' conduct caused injury to the business or

15   property of Plaintiff and the members of the Class;

16            v.        The appropriate measure of the amount of damages suffered by

17   the Class;

18            vi.        Whether Defendants' conduct violates Section 1 of the Sherman

19   Act (15 U.S.C. § 1) as alleged in the First Claim for Relief;

20

21            vii.        Whether Defendants' conduct violates the Indirect Purchaser

22   States' antitrust laws as alleged in the Second Claim for Relief;

23            viii.        Whether Defendants' conduct violates the unfair competition and

24   consumer protection laws of the Consumer Protection States as alleged in the Third Claim for

25   Relief;

26            ix.        The appropriate nature of class-wide equitable relief.

27

28

1    e.    These and other questions of law and fact common to the members of the

2    Class predominate over any questions affecting only individual members, including legal and

3    factual issues relating to liability and damages;

4    f.    After determination of the predominant common issues identified above,

5    if necessary or appropriate, the Class can be divided into logical and manageable subclasses;

6    g.    Plaintiff will fairly and adequately protect the interests of the Class in that

7    Plaintiff has no interests that are antagonistic to other members of the Class and has retained

8    counsel competent and experienced in the prosecution of class actions and antitrust litigation to

9    represent him and the Class;

10    h.    A class action is superior to other available methods for the fair and

11    efficient adjudication of this litigation since individual joinder of all damaged Class members is

12    impractical. The damages suffered by the individual Class members are relatively small, given

13    the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,

14    absent the availability of class action procedures it would not be feasible for Class members to

15    redress the wrongs done to them. Even if the Class members could afford individual litigation,

16    the court system could not. Further, individual litigation presents the potential for inconsistent or

17    contradictory judgments and would greatly magnify the delay and expense to all parties and the

18    court system. Therefore, the class action device presents far fewer case management difficulties

19    and will provide the benefits of unitary adjudication, economy of scale and comprehensive

20    supervision in a single court;

21    i.    Defendants have acted, and/or refused to act, on grounds generally

22    applicable to the Class, thereby making appropriate final injunctive relief with respect to the

23    Class as a whole; and

24    j.    In the absence of a class action, Defendants would be unjustly enriched

25    because they would be able to retain the benefits and fruits of its wrongful conduct.

26    **CRT PRODUCT MARKET**

27    53.    CRT stands for "cathode ray tube." A CRT is a vacuum tube that is coated on its

28    inside face with light sensitive phosphors. An electron gun at the back of the vacuum tube emits

1   electron beams. When the electron beams strike the phosphors, the phosphors produce either

2   red, green, or blue light. A system of magnetic fields inside the CRT, as well as varying

3   voltages, directs the beams to produce the desired colors. This process is rapidly repeated

4   several times per second to produce the desired images.

5        54.    CRT technology was first developed more than a century ago. The first

6   commercially practical CRT television was made in 1931.  However, it was not until the RCA

7   Corporation introduced the product at the 1939 World's Fair that it became widely available to

8   consumers. Since then, CRTs have become the heart of most display products, including

9   televisions, computer monitors, oscilloscopes, air traffic control monitors, and ATMs. Even

10  large public displays, including many scoreboards at sports arenas, are comprised of thousands

11  of single color CRTs.

12       55.    Until the last few years, CRTs were the dominant technology used in displays,

13  including television and computer monitors. During the Class Period, this translated into the sale

14  of millions of CRT Products, generating billions of dollars in annual profits.

15       56.    Conventional CRT televisions are being rapidly replaced by liquid crystal and

16  plasma displays, resulting in this alleged price fixing scheme to slow down the declining CRT

17  Product prices. Between 2000 and 2006, revenues from the sale of CRT televisions in the United

18  States declined by 30.7 percent and are predicted to decline by an additional 84.5 percent

19  between 2006 and 2010.

20       57.    Although demand has been sharply declining as a result of the popularity of flat-

21  panel LCDs and plasma televisions, CRT televisions were still being sold during the Class

22  Period, making collusion and the international price fixing conspiracy worthwhile. Due to the

23  high costs of LCD panels and plasma displays during the Class Period, a niche market for CRTs

24  existed as a cheaper alternative to these new technologies.

25       **STRUCTURAL CHARACTERISTICS OF THE CRT PRODUCT MARKET**

26       58.    The structural characteristics of the CRT Product market are conducive to the

27  type of collusive activity alleged in this Complaint.

28

1    59.    CRT Products are commodity-like products which are manufactured in

2    standardized sizes. One defendant's CRT Product for a particular application, such as a

3    particular size television set or computer monitor, is substitutable for another's. Defendants sell

4    and Plaintiff (and Class members) purchases CRT Products primarily on the basis of price.

5    60.    It is easier to form and sustain a cartel when the product in question is

6    commodity-like because it is easier to agree on prices to charge and to monitor those prices once

7    an agreement is formed.

8    61.    Demand for CRT Products is declining. Static or declining demand is another

9    factor which makes the formation of a collusive arrangement more likely because it provides a

10    greater incentive to firms to avoid price competition.

11    62.    Defendants are horizontal competitors, meaning that they sell at the same

12    wholesale or retail level of the distribution chain. This makes it easier to monitor adherence to

13    the cartel.

14    63.    There are substantial barriers to entry in the CRT Products industry. It would

15    require substantial time. resources and industry knowledge to even potentially overcome the

16    barriers to entry. It is also extremely unlikely that a new producer would enter the market in

17    light of the declining demand for CRT products.

18    64.    Newer industries are typically characterized by rapid growth, innovation and high

19    profits. The CRT Product market is a mature one, and like many mature industries, is

20    characterized by slim profit margins, creating a motivation to collude.

21    65.    During the Class Period, the CRT industry has been dominated by relatively few

22    companies. In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display and

23    Chunghwa Picture Tubes together held a collective 78% share of the global CRT market. The

24    high concentration of market share facilitates coordination since there are fewer cartel members

25    among which to coordinate pricing or allocate markets, and it is easier to monitor the pricing

26    and production of other cartel members.

27    66.    The CRT industry also had significant consolidation during the Class Period,

28    including but not limited to: (a) the creation of LG Philips Displays in 2001 as a joint venture

1  between Royal Philips and LG Electronic's CRT business; (b) the 2002 merger of Toshiba and
2  Matsushita into Matsushita-Toshiba; and (c) Orion's agreement to manufacture CRT Products
3  for Toshiba, which effectively took Toshiba's capacity out of the market.

4    67. Involvement in long standing joint ventures, both in the CRT market and closely
5  related markets, also gave these "competitors" continuous opportunities to discuss pricing,
6  capacity utilization, and other important prospective market information. The mutually
7  beneficial nature of the business relations between certain Defendants not only provided the
8  opportunity to conspire; it also created a financial incentive to do so.

9    68. Examples of the high degree of cooperation among Defendants in both the CRT
10  market and other closely related markets include the following:

11    a. Defendant Chungwha has a long standing joint venture with Defendant
12  Samsung Electronics Co., Ltd. for the production of liquid crystal display panels. Chungwha
13  now licenses the technology from Defendant Royal Philips, although this is a recent
14  development that helped resolve a patent infringement suit filed in 2002.

15    b. Defendants LG Electronics and Hitachi Ltd. entered into a joint venture in
16  2000 for the manufacture, sale and distribution of optical storage products such as DVD drives.

17    c. Defendant Samtel participates in a joint venture, Samcor Glass Limited,
18  with Defendant Samsung Electronics Co., Ltd. and non-Defendant Corning Inc., USA for the
19  production and supply of picture tube glass.

20    d. Defendant Orion participates in a joint venture for the manufacture of
21  CRT Products with Defendant Toshiba, as well as non-Defendants P.T. Tabung Gambar
22  Indonesia and Japanese trading company Sumitomo Corporation.

23    e. Defendant Samtel claims to have supplied CRTs to Defendants LG
24  Electronics, Samsung, Royal Philips, and Matsushita.

25    69. Defendants also maintain their close relationships through common membership
26  in trade associations. Defendants Chungwha, Hitachi and Samsung are all members of the
27  Society for Information Display. Defendants Samsung and LG Electronics are two of the co-
28  founders of the Korea Display Industry Association. Similarly, Defendants Orion, LG

1  Electronics, LP Displays, and Samsung are members of the Electronic Display Industrial
2  Research Association. Upon information and belief, Defendants use these trade associations as
3  vehicles for discussing and agreeing upon their pricing for CRT Products. At the meetings of
4  these trade associations, Defendants exchange proprietary and competitively sensitive
5  information which they use to implement and monitor the conspiracy.

6  ## DEFENDANTS' COLLUSIVE ACTIVITIES

7       70.    Plaintiff is informed and believes, and thereon alleges, that in order to control and
8  maintain profitability during declining demand for CRTs, Defendants and their co-conspirators
9  have engaged in a contract, combination, trust or conspiracy, the effect of which has been to
10  raise the prices at which they sold CRT Products to artificially inflated levels from at least
11  January 1, 1995 through the present.

12       71.    Defendants' collusion is evidenced by unusual price movements in the CRT
13  market. In the 1990s, industry analysts repeatedly predicted declines in consumer prices for
14  CRTs that did not fully materialize. Despite these predictions, and the existence of economic
15  conditions warranting a drop in prices, CRT prices nonetheless remained stable.

16       72.    During the Class Period, while demand in the United States for CRT Products
17  continued to decline, defendants' conspiracy was effective in moderating the normal downward
18  pressures on prices for CRT Products caused by the entry and popularity of the new generation
19  LCD panels and plasma display products.

20       73.    During the Class Period, there were not only periods of unnatural and sustained
21  price stability, but there were also unexplained increases in prices of CRT Products. These price
22  increases were despite the declining demand due to the approaching obsolescence of CRT
23  Products caused by the emergence of a new, potentially superior and clearly more popular
24  substitutable technology.

25       74.    These price increases and price stability in the market for CRT Products during
26  the Class Period are inconsistent with a competitive market for a product facing rapidly
27  decreasing demand caused by a new, substitutable technology.

28

1    75.    On November 8, 2007, antitrust authorities in Europe, Japan and South Korea

2    raided the offices of manufacturers of CRT Products as part of an international investigation of

3    alleged price fixing.

4    76.    Defendant MT Picture Display Co., Ltd., the CRT unit of Defendant Matsushita

5    Electric. has confirmed that it was raided by Japan's Fair Trade Commission.

6    77.    *Kyodo News* reported on November 8, 2007, upon information and belief, that

7    MT Picture Display fixed prices for CRTs with manufacturers in three Asian countries,

8    including South Korea's Samsung SDI Co.

9    78.    *Kyodo News* further reported that:

10    Officials of these three companies are believed to have had at least 10
meetings since 2005 in major Asian cities to coordinate target prices when
11    delivering their products to TV manufacturers in Japan and South Korea,
the sources said.
12

13    79.    Defendant Samsung SDI Co., Ltd. was raided by South Korea's Fair Trade

14    Commission. which has started an investigation into Samsung's CRT business.

15    80.    The European Commission confirmed that it had carried out surprise inspections

16    at the European offices of CRT Product manufacturers, seeking evidence of cartel activity in the

17    sector.

18    81.    According to Japan's *Nikkei Business Daily*, authorities in the United States were

19    also involved in the investigation of an alleged international cartel of CRT manufacturers.

20    82.    The *Asian Shimbun* further reported on November 10, 2007 that "[t]he

21    representatives held meetings in Southeast Asia where the companies operate CRT factories, the

22    sources said. The European Commission, the European Union's executive branch, and the U.S.

23    Justice Department have been investigating four companies' [referring to the four Asian-based

24    manufacturers—MT Picture Display, Samsung SDI Co., Chungwha Picture Tubes, LP Displays]

25    overseas units and are closely consulting with the Fair Trade Commission by sharing

26    information."

27    83.    On November 12, 2007, *Dow Jones International News* reported that Defendant

28    Chungwha Picture Tubes Ltd. had received a subpoena on November 9, 2007 issued by a

19
**CLASS ACTION COMPLAINT**

1  California District Court "to assist in an investigation into whether cathode ray tube
2  manufacturers had set up a cartel."

3      84.    Unnamed sources close to the investigation report that the firms are suspected of
4  fixing the amount they charge TV manufacturers for CRTs in an effort to stop prices from
5  dropping.

6      85.    On November 21, 2007, Defendant Royal Philips publicly disclosed that it too is
7  subject to one or more investigations into anticompetitive conduct in the CRT industry. Royal
8  Philips spokesman Joon Knapen declined to comment on which jurisdictions have started
9  investigations. Royal Philips stated that it intended to assist the regulators.

10      86.    As outlined above, Defendants have a history of competitor contacts resulting
11  from joint ventures, numerous cross-licensing agreements, and other alliances in related
12  businesses in the electronics industry.

13      87.    Several Defendants have a history of "cooperation" and anticompetitive conduct.
14  For example, Defendant Samsung was fined $300 million by the U.S. Department of Justice in
15  October 2005 for participating in a conspiracy to fix the prices of Dynamic Random Access
16  Memory.

17      88.    Defendants Samsung and Toshiba have acknowledged being contacted by the
18  U.S. Department of Justice as part of an ongoing investigation for fixing prices of Static
19  Random Access Memory and NAND Flash Memory.

20      89.    In December 2006, authorities in Japan, Korea, the European Union and the
21  United States revealed a comprehensive investigation into anticompetitive conduct among CRT
22  manufacturers. Defendant Samsung, Toshiba and LG Philips (a joint venture between
23  Defendants LG Electronics and Royal Philips) are under criminal investigation for price fixing
24  in the closely related CRT market.

25      90.    By engaging in collusive conduct in the market for CRT Products, Defendants
26  were able to manipulate and artificially fix, raise, maintain or stabilize the prices for the CRT
27  Products that they manufactured and sold in the United States.

28

1      91.      During the Class Period, Plaintiff and the class members indirectly purchased
2   CRT Products manufactured by the Defendants or their co-conspirators.

3      92.      Plaintiff and the class members paid more for their indirect CRT Product
4   purchases than they would have paid had Defendants not fixed CRT Product prices and
5   cooperated in other aspects of the CRT Product market.

6      93.      As a direct and proximate result of Defendants' conspiracy, Plaintiff and the class
7   members have been injured and financially damaged in their respective businesses and property
8   in presently undetermined amounts.

9                                **VIOLATIONS ALLEGED**

10                                **First Claim for Relief**

11                        **(Violation of Section 1 of the Sherman Act)**

12      94.      Plaintiffs incorporate and reallege, as though fully set forth herein, each and
13   every allegation set forth in the preceding paragraphs of this Complaint.

14      95.      Beginning at a time unknown to Plaintiffs, but at least as early as January 1,
15   1995, through at the present, the exact dates being unknown to Plaintiffs and exclusively within
16   the knowledge of Defendants. Defendants and their co-conspirators, entered into a continuing
17   agreement, understanding, and conspiracy to unreasonably restrain trade and commerce in the
18   United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

19      96.      In particular, Defendants have combined and conspired to fix, raise, maintain or
20   stabilize the prices of CRT Products sold in the United States.

21      97.      Defendants, by their unlawful conspiracy, artificially raised, inflated and
22   maintained the market prices of CRT Products as herein alleged.

23      98.      The contract, combination or conspiracy consisted of a continuing agreement,
24   understanding and concert of action among Defendants and their co-conspirators, the substantial
25   terms of which were to fix, raise, maintain and stabilize the prices of CRT Products they sold in
26   the United States and elsewhere.

27      99.      In formulating and carrying out the alleged agreement, understanding, and
28   conspiracy, the Defendants and their co-conspirators did those things that they combined and

                                        21
                            **CLASS ACTION COMPLAINT**

1    conspired to do. including, but not limited to the acts, practices, and course of conduct set forth

2    above, and the following, among others:

3               a.    Participated in meetings and conversations to discuss the prices of CRT
4                     Products;

5               b.    Agreed to manipulate prices and supply of CRT Products in a manner that
6                     deprived purchasers of CRT Products of free and open competition;

7               c.    Issued price announcements and price quotations in accordance with the
8                     agreements reached; and

9               d.    Sold CRT Products to customers in the United States at non-competitive
10                    prices.

11       100.    The combination and conspiracy alleged herein has had the following effects,

12    among others:

13              a.    Price competition in the sale of CRT Products has been restrained,
14                    suppressed and/or eliminated in the United States;

15              b.    Prices for CRT Products sold by Defendants and their co-conspirators
16                    have been fixed, raised, maintained and stabilized at artificially high, non-
17                    competitive levels throughout the United States; and

18              c.    Those who purchased CRT Products directly or indirectly from
19                    Defendants have been deprived the benefits of free and open competition.

20       101.    As a direct result of the unlawful conduct of Defendants and their co-conspirators

21    in furtherance of their continuing contract, combination or conspiracy, Plaintiff and the members

22    of the class have been injured and will continue to be injured in their business and property by

23    paying more for CRT Products purchased indirectly from the Defendants and their co-

24    conspirators than they would have paid and will pay in the absence of the combination and

25    conspiracy.

26       102.    These violations are continuing and will continue unless enjoined by this Court.

27

28

1    103.    Pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, Plaintiff and the Class

2  seek the issuance of an injunction against Defendants, preventing and restraining the violations

3  alleged herein.

4                                **Second Claim For Relief**

5                            **(Violation of State Antitrust Statutes)**

6    104.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

7  every allegation set forth in the preceding paragraphs of this Complaint.

8    105.    Defendants' intentional and purposeful anticompetitive acts that are described

9  above, including but not limited to acts of collusion to set prices and the actual act of price

10  fixing itself, were intended to and did in fact case Plaintiff and the members of the Class to pay

11  supracompetitive prices for CRT Products purchased in the Indirect Purchaser States.

12    106.    Defendants' contract, combination and conspiracy as described above is in

13  violation of the following state antitrust statutes:

14    107.    By reason of the foregoing, Defendants have entered into agreements in restraint

15  of trade in violation of Arizona Revised Stat. §§44-1401 et seq.

16    108.    By reason of the foregoing, Defendants have entered into agreements in restraint

17  of trade in violation of California Business & Professions Code §16720 et seq.

18    109.    By reason of the foregoing, Defendants have entered into agreements in restraint

19  of trade in violation of District of Columbia Code Ann. §§28-4503 et seq.

20    110.    By reason of the foregoing, Defendants have entered into agreements in restraint

21  of trade in violation of Iowa Code §§553.1 et seq.

22    111.    By reason of the foregoing, Defendants have entered into agreements in restraint

23  of trade in violation of Kansas Stat. Ann. §§50-101 et seq.

24    112.    By reason of the foregoing, Defendants have entered into agreements in restraint

25  of trade in violation of Maine Rev. Stat. Ann. 10, §§1101 et seq.

26    113.    By reason of the foregoing, Defendants have entered into agreements in restraint

27  of trade in violation of Michigan Comp. Laws Ann. §§445.773 et seq.

28

1    114. By reason of the foregoing, Defendants have entered into agreements in restraint
2    of trade in violation of Minnesota Stat. §§325D.52 et seq.

3    115. By reason of the foregoing, Defendants have entered into agreements in restraint
4    of trade in violation of Mississippi Code Ann. §75-21-1 et seq.

5    116. By reason of the foregoing, Defendants have entered into agreements in restraint
6    of trade in violation of Nebraska Rev. Stat. §59-801 et seq.

7    117. By reason of the foregoing, Defendants have entered into agreements in restraint
8    of trade in violation of Nevada Rev. Stat. Ann. §§598A et seq.

9    118. By reason of the foregoing, Defendants have entered into agreements in restraint
10   of trade in violation of New Mexico Stat. Ann. §§57-1-1 et seq.

11   119. By reason of the foregoing, Defendants have entered into agreements in restraint
12   of trade in violation of North Carolina Gen. Stat. §§75-1 et seq.

13   120. By reason of the foregoing, Defendants have entered into agreements in restraint
14   of trade in violation of North Dakota Cent. Code §§51-08.1-01 et seq.

15   121. By reason of the foregoing, Defendants have entered into agreements in restraint
16   of trade in violation of South Dakota Codified Laws Ann. §§37-1 et seq.

17   122. By reason of the foregoing, Defendants have entered into agreements in restraint
18   of trade in violation of Tennessee Code Ann. §§47-25-101 et seq.

19   123. By reason of the foregoing, Defendants have entered into agreements in restraint
20   of trade in violation of Vermont Stat. Ann. 9 §§2453 et seq.

21   124. By reason of the foregoing, Defendants have entered into agreements in restraint
22   of trade in violation of West Virginia Code §§47-18-1 et seq.

23   125. By reason of the foregoing, Defendants have entered into agreements in restraint
24   of trade in violation of Wisconsin Stat. §§133.01 et seq.

25   126. Class members in each of the states listed above paid supracompetitive,
26   artificially inflated prices for CRT Products. As a direct and proximate result of Defendants'
27   unlawful conduct, Plaintiffs and members of the Class have been injured in their business and
28

**24**

1  property in that they paid more for CRT Products than they otherwise would have paid in the

2  absence of Defendants' unlawful conduct.

3      127.   As a result of Defendants' and their co-conspirators' violation of the above

4  Indirect Purchaser States' antitrust laws, Plaintiff seeks damages, to be trebled where permitted

5  by a particular State's antitrust law, and costs of suit, including reasonable attorneys' fees, to the

6  extent permitted by the above Indirect Purchaser States' antitrust laws.

7  **Third Claim for Relief**

8  **(Violation of State Consumer Protection and Unfair Competition Statutes)**

9      128.   Plaintiff incorporates and realleges, as though fully set forth herein, each and

10  every allegation set forth in the preceding paragraphs of this Complaint.

11      129.   Defendants engaged in unfair competition or unfair, unconscionable, deceptive or

12  fraudulent acts or practices in violation of the state consumer protection and unfair competition

13  statutes listed below.

14      130.   Defendants have engaged in unfair competition or unfair or deceptive acts or

15  practices in violation of Arkansas Code §4-88-101 et seq.

16      131.   Defendants have engaged in unfair competition or unfair or deceptive acts or

17  practices in violation of California Business & Professions Code §17200 et seq.

18      132.   Defendants have engaged in unfair competition or unfair or deceptive acts or

19  practices in violation of District of Columbia Code §28-3901 et seq.

20      133.   Defendants have engaged in unfair competition or unfair or deceptive acts or

21  practices in violation of Florida Stat. §501.201 et seq.

22      134.   Defendants have engaged in unfair competition or unfair or deceptive acts or

23  practices in violation of Hawaii Rev. Stat. §480 et seq.

24      135.   Defendants have engaged in unfair competition or unfair or deceptive acts or

25  practices in violation or Kansas Stat. §50-623 et seq.

26      136.   Defendants have engaged in unfair competition or unfair or deceptive acts or

27  practices in violation of 5 Maine Rev. Stat. §207 et seq.

28

1       137.   Defendants have engaged in unfair competition or unfair or deceptive acts or

2  practices in violation of Massachusetts G.L. c. 93A, §2 et seq.

3       138.   Defendants have engaged in unfair competition or unfair or deceptive acts or

4  practices in violation of Nebraska Rev. Stat. §59-1601 et seq.

5       139.   Defendants have engaged in unfair competition or unfair or deceptive acts or

6  practices in violation of New Hampshire Revised Statutes §358-A:1 et seq.

7       140.   Defendants have engaged in unfair competition or unfair or deceptive acts or

8  practices in violation of New Mexico Stat. §57-12-1 et seq.

9       141.   Defendants have engaged in unfair competition or unfair or deceptive acts or

10  practices in violation of New York Gen Bus. Law §349 et seq.

11       142.   Defendants have engaged in unfair competition or unfair or deceptive acts or

12  practices in violation of North Carolina Gen. Stat. §75-1.1 et seq.

13       143.   Defendants have engaged in unfair competition or unfair or deceptive acts or

14  practices in violation of Rhode Island Gen. Laws §6-13.1-1 et seq.

15       144.   Defendants have engaged in unfair competition or unfair or deceptive acts or

16  practices in violation of Vermont Stat. Ann. Title 9, §2451 et seq.

17       145.   Defendants have engaged in unfair competition or unfair or deceptive acts or

18  practices in violation of West Virginia Code §46A-6-101 et seq.

19       146.   Class members in each of the Consumer Fraud States listed above paid

20  supracompetitive, artificially inflated prices for CRT Products. As a direct and proximate result

21  of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their

22  business and property in that they paid more for CRT Products than they otherwise would have

23  paid in the absence of Defendants' unlawful conduct.

24       147.   Plaintiff and the Class are therefore entitled to all appropriate relief as provided

25  for by the above Consumer Fraud States' laws, including but not limited to, actual damages,

26  injunctive relief, attorneys' fees and equitable relief such as restitution and/or disgorgement of

27  all revenues, earnings, profits, compensation and benefits which may have been obtained by

28  Defendants as a result of their unlawful conduct.

1

**Fourth Claim for Relief**

2

**(Unjust Enrichment and Disgorgement of Profits)**

3       148.    Plaintiff incorporates and realleges, as though fully set forth herein, each and

4   every allegation set forth in the preceding paragraphs of this Complaint.

5       149.    Defendants have been unjustly enriched through overpayments by Plaintiff and

6   the Class members and the resulting profits.

7       150.    Under common law principles of unjust enrichment, Defendants should not be

8   permitted to retain the benefits conferred via overpayments by Plaintiff and the members of the

9   Class.

10      151.    Plaintiff seeks disgorgement of all profits resulting from such overpayments and

11  establishment of a constructive trust from which Plaintiff and the Class members may seek

12  restitution.

13

**FRAUDULENT CONCEALMENT**

14      152.    Throughout the relevant period, Defendants affirmatively and fraudulently

15  concealed their unlawful conduct against Plaintiff and the Class.

16      153.    Plaintiff and the members of the Class did not discover, and could not discover

17  through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as

18  alleged herein until shortly before this litigation was commenced. Nor could Plaintiff and the

19  members of the Class have discovered the violations earlier than that time because Defendants

20  conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in

21  furtherance thereof, and fraudulently concealed their activities through various other means and

22  methods designed to avoid detection. The conspiracy was by its nature self-concealing.

23      154.    Defendants engaged in a successful, illegal price-fixing conspiracy with respect

24  to CRT Products, which they affirmatively concealed, in at least the following respects:

25           a.      By agreeing among themselves not to discuss publicly, or otherwise

26  reveal, the nature and substance of the acts and communications in furtherance of their illegal

27  scheme; and

28

27
**CLASS ACTION COMPLAINT**

1        b.      By giving false and pretextual reasons for their CRT Product price

2   increases during the relevant period and by describing such pricing falsely as being the result of

3   external costs rather than collusion.

4        155.    As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff

5   and the Class assert the tolling of any applicable statute of limitations affecting the rights of

6   action of Plaintiff and the members of the Class.

7                                **PRAYER FOR RELIEF**

8        WHEREFORE. Plaintiff prays as follows:

9        A.      That the Court determine that this action may be maintained as a class action

10  under Rule 23 of the Federal Rules of Civil Procedure;

11       B.      That the Court adjudge and decree that the unlawful conduct, contract,

12  combination and conspiracy alleged herein constitutes:

13              a.  A violation of the Sherman Act, 15 U.S.C. §1, as alleged in the First Claim

14                  for Relief;

15              b.  A violation of the Indirect Purchaser States' antitrust laws as alleged in the

16                  Second Claim for Relief;

17              c.  A violation of the Consumer Fraud States' consumer protection and unfair

18                  competition laws as alleged in the Third Claim for Relief; and

19              d.  Acts of unjust enrichment as set forth in the Fourth Claim for Relief herein.

20       C.      That Plaintiff and the Class recover damages, as provided by the Indirect

21  Purchaser States' antitrust laws and the Consumer Fraud States' consumer protection and unfair

22  competition laws, and that a joint and several judgment in favor of Plaintiff and the Class be

23  entered against the Defendants in an amount to be trebled in accordance with such laws;

24       D.      That Defendants, their co-conspirators, successors, transferees, assigns, parents,

25  subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all

26  other persons acting or claiming to act on behalf of Defendants, or in concert with them, be

27  permanently enjoined and restrained from, in any manner, directly or indirectly, continuing,

28  maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of

1    action, or adopting or following any practice, plan, program or design having a similar purpose

2    or effect in restraining competition;

3        E.        That Plaintiff be awarded restitution, including disgorgement of profits obtained

4    by Defendants as a result of its acts of unfair competition and acts of unjust enrichment;

5        F.        That the Court award Plaintiff and the class he represents pre-judgment and post-

6    judgment interest as permitted by law;

7        G.        That Plaintiff and the members of the Class recover their costs of suit, including

8    reasonable attorneys' fees as provided by law; and

9        H.        That the Court award Plaintiff and the Class he represents such other and further

10   relief as may be necessary and appropriate.

11

12                                    **JURY DEMAND**

13       Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

14
     Dated: December 13, 2007        By:    _Mario N. Alioto_
15                                          Mario N. Alioto (56433)
16                                          Lauren C. Russell (241151)
                                            TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
17                                          2280 Union Street
                                            San Francisco, CA  94123
18                                          Telephone:  (415) 563-7200
                                            Facsimile: (415) 346-0679
19                                          malioto@tatp.com ; laurenrussell@tatp.com

20                                          Joseph M. Patane (72202)
21                                          LAW OFFICES OF JOSEPH M. PATANE
                                            2280 Union Street
22                                          San Francisco, CA 94123
                                            Telephone: (415) 563-7200
23                                          Facsimile: (415) 346-0679
                                            E-mail: jpatane@tatp.com
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lawrence G. Papale (67068)
LAW OFFICES OF LAWRENCE G. PAPALE
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
E-mail: lgpapale@papalelaw.com

Attorneys for Plaintiff Figone
And All Others Similarly Situated